IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MARCO CHARLES GILBERT,           )
                                 )
          Petitioner,            )
                                 )
     v.                          )          CV 119-178
                                 )           (Formerly CR 114-125)
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at Victorville United States Penitentiary in Adelanto, California, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.     BACKGROUND**

    **A.     Indictment**

On December 2, 2014, the grand jury in the Southern District of Georgia returned a three-count indictment against Petitioner:  Count One, possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); Count Two, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and Count Three, possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  <u>United States v.</u>

Gilbert, CR 114-125, doc. no. 1 (S.D. Ga. May 26, 2015) (hereinafter "CR 114-125").  As originally charged, Petitioner faced a statutory sentence of not more than five years of imprisonment on Count One, not less than five years nor more than life imprisonment on Count Two, and not more than ten years of imprisonment on Count Three.  CR 114-125, doc. no. 2. The Court appointed attorney Alex M. Brown to represent Petitioner.  Id., doc. no. 17.

### B.    Guilty Plea

On March 30, 2015, Petitioner appeared with counsel and pled guilty to Count Three, felon in possession of a firearm.  Id., doc. nos. 35-37.  The written plea agreement identified the elements of the offense as:  "(1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year."  Id., doc. no. 37, ("Plea Agreement"), p. 1.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; and (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 3-4.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea:

> On or about July 9, 2014, in Richmond County, within the Southern District of Georgia, the defendant, **MARCO CHARLES GILBERT**, having been previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year, that is,
>
>> *Possession With Intent to Distribute Cocaine*, convicted October 25, 2005, in the Superior Court of Richmond County, Georgia, Case No. 05-RCCR-596; and
>>
>> *Possession With Intent to Distribute Marijuana*, convicted November 15, 2007, in the Superior Court of Richmond

2

County, Georgia, Case No. 2007RCCR892;

> did knowingly possess in and affecting commerce a firearm, that is, one Ruger, Model LCP, .380 caliber pistol, serial number 3?526909, which had previously been transported in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Id. at 2. With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 8.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 5. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. By signing the Plea Agreement, Petitioner additionally attested Mr. Brown had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 6.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 55 ("Rule 11 Tr."), pp. 4, 7. Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on the felon in possession charge to which the guilty plea applied. Id. at 8, 17. Petitioner confirmed he had as much time as he needed to go over the charges with Mr. Brown. Id. at 9. Petitioner also testified under oath he was satisfied with the assistance he had received from

Mr. Brown and that he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 9, 12.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 9-11. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 12. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 13.

Judge Hall reviewed the statutory penalty of a sentence up to ten years in prison. Id. at 13-14. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $ 250,000 fine and three years of supervised release. Id. at 14. Judge Hall explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition. Id. Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 15. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 16. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence. Id.

Next, Judge Hall heard a factual basis for the guilty plea from Ron Rhodes, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.  Id. at 17-19.  SA Rhodes testified that on July 9, 2014 at approximately 10:45 p.m., the Richmond County Sheriff's Office was investigating complaints of drug trafficking at Ridgewood Apartments. Id. at 18.  Petitioner exited a 2004 Cadillac DeVille as officers approached the front of apartments 23 and 25.  Id.  An officer asked Petitioner why he was there, and Petitioner gave conflicting information.  Id.  The officers observed a Crown Royal bag in the driver's seat area of Petitioner's vehicle.  Id.  Through experience, the deputies knew Crown Royal bags are often used to conceal narcotics.  Id.  Petitioner denied a request to search his vehicle.  Id. at 19.  In response, a narcotics detection K-9 responded to the location and gave a positive alert to the vehicle.  Id.

A search of the vehicle revealed 58.4 grams of marijuana, a digital scale inside the Crown Royal bag, and a Ruger, .380 caliber pistol.  Id.  Petitioner was taken into custody and stated, without questioning, he had been shot five times in the past and needed a firearm for protection.  Id.  Petitioner's criminal history included two prior felony convictions out of the Superior Court of Richmond County, Georgia, and the Ruger pistol found inside Petitioner's vehicle was manufactured outside of Georgia.  Id.

Petitioner stated to Judge Hall the information provided by SA Rhodes and contained in Count Three of the indictment was true, that when he possessed the firearm in July 2014 he was already a convicted felon, and he was guilty of, and wanted to plead guilty to, the felon in possession charge.  Id. at 20.  Judge Hall then summarized the proceedings as follows:

> . . .  [T]he Court finds that [Petitioner] is competent. He fully understands the charges against him. There is an independent factual basis for his plea of guilty containing each of the essential elements of the offense. He knows the maximum

punishment that can be imposed on this charge and he knows his jury rights which he has knowingly and voluntarily waived.

I further find that [Petitioner's] decision to plead guilty was voluntary, knowing, and not as a result of any force, pressure, threats, or promises other than the promises made by the Government in the Plea Agreement. Therefore, [Petitioner's] plea is accepted, and I adjudge him guilty of count three of the indictment based upon that plea of guilty.

Id. at 21.

## C.    Sentencing

The United States Probation Office prepared a PSI setting Petitioner's Total Offense Level at twenty-four, Criminal History Category at V, and Guidelines imprisonment range at 130 to 162 months range, which exceeded the statutory maximum of ten years.  PSI ¶¶ 18, 36, 61; see also CR 114-125, doc. no. 2, p. 2.  The criminal history section listed the two prior felonies listed in the indictment and Plea Agreement.  PSI ¶¶ 31, 32.  The base offense level of twenty-four was increased by four points because Petitioner possessed the firearm while in possession of a felony quantity of marijuana.  PSI ¶ 19.  Had Petitioner been convicted of Count Two, dismissed as part of the Plea Agreement, the statutory penalty would have allowed a mandatory consecutive term of at least five years in prison.  CR 114-125, doc. no. 2; PSI ¶ 62.

Petitioner objected to section 16 of the PSI, which denied him an adjustment for acceptance of responsibility because he was arrested for possession of marijuana on February 28, 2015, while out on bond awaiting sentencing.  PSI ¶ 16; PSI Add.; CR 114-125, doc. no. 56, ("Sent. Tr."), pp. 3-7.  At sentencing, Mr. Brown argued Petitioner should be entitled to an adjustment for acceptance of responsibility because the marijuana possession charge was dismissed, and Petitioner, by his own admission, has a dependence on marijuana as a drug used

for self-medication.  Sent. Tr., p. 3.  Upon consideration of Petitioner's objection, his criminal record involving marijuana, and the testimony obtained from Ms. Greenwood, Judge Hall overruled the objection and adopted the PSI's factual statement and application of the Guidelines as his own findings of fact.  Id. at 6-7.

Mr. Brown requested Judge Hall consider a downward departure from the Guidelines range, incarcerate Petitioner in Edgefield, South Carolina, so he may be close to family, and recommend a drug rehabilitation program as part of Petitioner's treatment while incarcerated.  Id. at 10, 13.  Petitioner apologized for his criminal actions and explained he possessed a firearm out of fear for his life because he was a victim of a home invasion in 2013.  Id. at 10-12.  Judge Hall imposed a term of imprisonment of 120 months, three years supervised release, a $1,500 fine, and a $100 special assessment.  CR 114-125, doc. no. 40.  Counts One and Two were dismissed, and judgment was entered on May 26, 2015.  Id.

On direct appeal, the Eleventh Circuit affirmed Petitioner's conviction and sentence pursuant to the appeal waiver in Petitioner's plea agreement.  Id., doc. no. 60.

### D.       § 2255 Proceedings

Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)     He is entitled to have his felon in possession conviction vacated in light of the decision of the United States Supreme Court in Rehaif v. United States, 139 S. Ct.  2191 (U.S. 2019); and

(2)     The indictment was invalid because it did not contain the signature of the grand jury foreperson.

(See generally doc. no. 1.)

## II.     DISCUSSION

In Rehaif, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.  Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." United States v. Rehaif, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.  The Eleventh Circuit Court of Appeals has determined the Supreme Court's Rehaif decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law.  In re Palacios, 931 F.3d  1314, 1315 (11th Cir. 2019).  The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal.  Id.

Petitioner argues he was not aware of his status as a felon, and the indictment is invalid because it failed to list the mens rea element of the charge and does not contain the signature of the grand jury foreperson.  (Doc. no. 1, pp. 1-3.)  Respondent argues Petitioner's Rehaif claim should be denied for four reasons:  (1) the claim is barred by the collateral attack waiver; (2) the non-jurisdictional defect of failing to include the mens rea element in the indictment was waived by entry of a knowing and voluntary guilty plea; (3) the claim is procedurally defaulted; and (4) any error was harmless.  Respondent argues Petitioner's allegation of a signature omission on the indictment should be dismissed as untimely.

### A.    Petitioner's <u>Rehaif</u> Claim is Barred by the Valid Collateral Attack Waiver in the Plea Agreement

It is well-settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  <u>United States v. DiFalco</u>, 837 F.3d 1207, 1219-20 (11th Cir. 2016); <u>United States v. Weaver</u>, 275 F.3d 1320, 1333 (11th Cir. 2001); <u>United States v. Bushert</u>, 997 F.2d 1343, 1345 (11th Cir. 1993); <u>see also United States v. Warner-Freeman</u>, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*).  Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." <u>United States v. Grinard-Henry</u>, 399 F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." <u>Weaver</u>, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  <u>See</u> <u>United States v. Pease</u>, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); <u>United States v. Howle</u>, 166 F.3d 1166, 1168-69 (11th Cir. 1999); <u>United States v. Benitez-Zapata</u>, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement, signed and verified by Petitioner, explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same, on any ground other than ineffective assistance of counsel.  Plea Agreement, p. 5.  None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum of ten years of imprisonment or the advisory

Guidelines range, and the government did not appeal.  Id.  Likewise, the Rehaif claim is not based on a claim of ineffective assistance, and therefore does not fall within the only exception to the collateral attack waiver.[1]  Id.  Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms.  Rule 11 Tr. 12.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and the Rehaif claim falls within the scope of the waiver.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's Rehaif claim.  See United States v. Marc, - F. App'x -, No. 19-10656, 2020 WL 1487670, at *3-4 (11th Cir. Mar. 25, 2020) (enforcing knowing and voluntary appeal waiver to bar Rehaif claim).

**B.     Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary**

Having determined Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the Court

---

[1]Petitioner refers to "ineffective counsel" when discussing the Rehaif claim in his reply to Respondent's response to his § 2255 motion.  (Doc. no. 4, p. 3.)  Petitioner has not sought leave to amend the petition to assert an ineffective assistance of counsel claim.  Even if he had, the claim would be subject to summary dismissal because Petitioner was sentenced before the Rehaif decision, and any mens rea objection raised by defense counsel would not have succeeded under then existing law.  See United States v. Finley, 805 F. App'x 823, 827 (11th Cir. 2020) (holding defense counsel did not render ineffective assistance of counsel for failing to object to felon in possession of a firearm charge based on Supreme Court's decision in Rehaif because such an objection would not have succeeded under then existing law.)

turns to the knowing and voluntary nature of the guilty plea.  For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement."  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing Bushert, 997 F.2d at 1350-51).

### 1.    Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core

principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on the felon in possession charge, and reviewed the elements of the offense the government would have to prove to obtain a conviction.  Rule 11 Tr. 8, 17.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 9-11.  Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement.  Id. at 4, 13.  Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction, to include up to ten years in prison.  Id. at 13-14.  Finally, Petitioner also testified he was satisfied with the help he had received from Mr. Brown.  Id. at 9; see also Plea Agreement, p. 6 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely

satisfied with the legal advice given and the work performed by his attorney."); p. 8 ("I have read and carefully reviewed this agreement with my attorney.").

The thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the felon in possession charge.  Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's Rehaif claim.  Likewise, as discussed below, the valid plea also bars the non-jurisdictional error of failure to include the mens rea element now required for conviction on a § 922(g), felon in possession charge.

C.     **The Rehaif Claim Is a Non-Jurisdictional Error Waived by the Knowing and Voluntary Guilty Plea**

Petitioner alleges the indictment containing the charge to which he pleaded guilty was inadequate because it failed to include the mens rea element of the offense, *i.e.*, he claims the omission of the mens rea element "constitutes plain error and cannot be considered harmless." (Doc. no. 1, p. 3.)  Petitioner asserts the indictment was therefore insufficient and he is innocent of his felon in possession conviction.  (Id.)  The record shows otherwise:  (1) the indictment listed Petitioner's prior felony convictions, (CR 114-125, doc. no. 1), (2) Judge Hall reviewed those convictions at the change of plea proceedings, (Rule 11 Tr. 8), (3) Petitioner admitted he was already a convicted felon when he possessed the firearm in July 2014, (id. at 20); (4) Petitioner signed the Plea Agreement recounting the prior convictions, (CR 114-125, doc. no. 55, p. 2), and (5) the PSI detailed Petitioner's prior criminal history, to which he did not object, (PSI ¶¶ 31, 32).

13

Even if the Court were to presume for the sake of argument Petitioner did not know his status as a convicted felon prohibited him from possessing a firearm, the law in the Eleventh Circuit is clear:  failure to include the mens rea element of a § 922(g), felon in possession charge, is a non-jurisdictional defect.  See United States v. Moore, 954 F.3d 1322, 1334-35 (11th Cir. 2020); United States v. McClellan, - F.3d -, No. 18-13289, 2020 WL 2188875, at *6 (11th Cir. May 6, 2020).  Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge.  See United States v. Ward, 796 F. App'x 591, 599 (11th Cir. 2019) (per curiam); see also United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect waived by guilty plea); United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### D. Petitioner Procedurally Defaulted His Rehaif Claim by Failing to Assert it on Direct Appeal

Even if Petitioner's Rehaif claim were not barred by the valid collateral attack waiver and guilty plea, it is procedurally defaulted.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without

further factual development." <u>Mills</u>, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Mills</u>, 36 F.3d at 1055-56 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  <u>See</u> <u>Weeks v. Jones</u>, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991)).  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (citations omitted); <u>see also</u> <u>United States v. Bane</u>, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); <u>Lynn</u>, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170.  As to the exception for actual

innocence, the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a <u>severely confined</u> category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623-24 (citation omitted).

Petitioner did not raise his mens rea claim at his change of plea hearing, at his sentencing, or on direct appeal. Petitioner points out as justification for this failure that the claim was unavailable before the Supreme Court's <u>Rehaif</u> decision, which announced a new rule of constitutional law. (Doc. no. 1, p. 1.) However, as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement. <u>Id.</u> at 623. Moreover, the building blocks for the claim were available. <u>Bane</u>, 948 F.3d at 1297. As the Eleventh Circuit has explained, the Supreme Court's <u>Rehaif</u> decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2). <u>See</u> <u>In re Palacios</u>, 931 F.3d at 1315.

Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument. After all, as the Tenth Circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." <u>Prost v. Anderson</u>, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to

litigants who "took the trouble to challenge adverse circuit precedent." Id. at 590-91.[2]  As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused.  See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. Petitioner asserts, in conclusory fashion, his Rehaif claim is based on newly discovered evidence he was erroneously indicted on Count Three because the indictment did not list the mens rea element of the charge.  (Doc. no. 1, pp. 1-2.)  However, he presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element.  See McQuiggin, 569 U.S. at 386.  This is particularly true in light of Petitioner's criminal history detailed in Part II(C).  Prior to the offense conduct at issue here, Petitioner accrued a criminal history that included two felony convictions and two prison sentences of five and six years to be served concurrently.  The indictment listed Petitioner's multiple prior felony convictions.  Judge Hall reviewed those convictions at the change of plea proceedings.  Petitioner admitted he was already a convicted felon when he possessed the firearm in July 2014.  Petitioner signed the Plea Agreement recounting the prior convictions, and the PSI detailed Petitioner's prior criminal history, to which he did not object.  "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."  United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

---

[2]For the sake of completeness, the Court notes a collateral attack waiver cannot serve as cause to excuse procedural default.  See Lester v. United States, No. 3:17-CR-76-J-32JBT, 3:18-cv-1076-J-32JBT, 2020 WL 1911462, at *4 (M.D. Fla. Apr. 20, 2020).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon.  "Where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a <u>Rehaif</u> error does not affect his substantial rights."  <u>McClellan</u>, 2020 WL 218875, at *6 (citing <u>United States v. Reed</u>, 941 F.3d 1018, 1022 (11th Cir. 2019)); <u>see also</u> <u>Ward</u>, 796 F. App'x at 600-01 (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm).  Stated otherwise, a bare <u>Rehaif</u> claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim.  <u>See</u> <u>In re Wright</u>, 942 F.3d 1063, 1065 (11th Cir. 2019); <u>Reed</u>, 941 F.3d at 1021-22.

In addition, because Petitioner pleaded guilty to the felon in possession charge in exchange for the government dismissing the remaining counts, including the more serious drug trafficking crime charge in Count Two with a mandatory consecutive term of at least five years in prison, Petitioner must also show actual innocence as to the dismissed charges.  <u>See</u> <u>Bousley</u>, 523 U.S. at 624.  As explained in detail in the PSI, and as conceded by Defendant at the change of plea proceeding, a search of Petitioner's vehicle revealed 58.4 grams of marijuana and a digital scale.  PSI ¶ 10; Rule 11 Tr. 18.  Petitioner does not now offer any evidence to call into doubt his guilt on the charge in Count Two.

For all of these reasons, Petitioner procedurally defaulted his <u>Rehaif</u> claim.  <u>See</u> <u>United States v. Sanders</u>, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 <u>Rehaif</u> claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

18

### E.   Petitioner Is Not Entitled to Relief on the Merits of His <u>Rehaif</u> Claim Because Omission of the Mens Rea Element Was Harmless Error

Even if Petitioner's <u>Rehaif</u> claim were not barred by the valid collateral attack waiver, barred by entry of a valid guilty plea, and procedurally defaulted, he is not entitled to relief because the <u>Rehaif</u> error was harmless.  It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure."  <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962).  On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious effect or influence" on the outcome of the underlying proceedings.  <u>Al-Amin v. Warden Georgia Dep't of Corr.</u>, 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), *cert. denied sub nom.* <u>Al-Amin v. Ward</u>, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020).  The Eleventh Circuit has explained that when applying the appropriate harmless error analysis under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand."  <u>Ross v. United States</u>, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms forming the basis of his § 922(g) conviction on Count Three.  As discussed in Part II(C) & (D), *supra*, Petitioner had twice been convicted of felonies resulting in prison sentences of five and six years, to be served concurrently.  PSI ¶¶ 31, 32.  The PSI recounted Petitioner "was a convicted felon at the time of his arrest and therefore was ineligible to legally possess a firearm."  PSI

¶ 15.  Petitioner did not object to any of the information in the PSI.  Nor did he object when he signed the Plea Agreement listing his prior felonies, Judge Hall reviewed the charges at the change of plea hearing, or SA Rhodes testified about Petitioner's prior criminal history.  Petitioner also specifically told Judge Hall he was "already a convicted felon" when he possessed the firearms in July 2014.  Rule 11 Tr. 20.

That Petitioner knew his status as a convicted felon is proven by the undisputed fact his two prior felony convictions resulted in him serving two separate terms of imprisonment, both of which exceeded one year.  See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Caldwell, - F. App'x -, No. 18-15987, 2020 WL 914922, at *4 (11th Cir. Feb. 26, 2020) (per curiam) (finding no plain error affecting substantial rights on direct appeal where defendant responded affirmatively to district court questions if he knew what a felony was and if he had previously pled guilty to a felony); United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (per curiam) (finding no plain error affecting substantial rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence shows knowledge of status as a felon); United States v. Gilcrest, 792 F. App'x 734, 736 (11th Cir. 2019) (per curiam) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown the Rehaif error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," and he is not entitled to relief.  See Brecht, 507 U.S. at 634 & n.8.

**F.     Petitioner's Claim Related to the Indictment's Signature is Untimely Under § 2255(f)**

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1.     the date on which the judgment of conviction becomes final;

2.     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).   Petitioner's judgment of conviction was entered on May 26, 2015. Petitioner filed a direct appeal, which was dismissed pursuant to his valid collateral waiver on October 3, 2016.  Because Petitioner did not file a petition for writ of certiorari, his judgment and sentence became final on January 2, 2017, ninety days after his appeal was dismissed.  See Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (holding judgment of conviction becomes "final" on expiration of ninety–day deadline for filing petition for writ of certiorari).  Petitioner signed the present motion on October 1, 2019, and the Clerk docketed the motion on October 15, 2019.  (Doc. no. 1, p. 3.)  Thus, Petitioner first asserted his "missing signature" claim in the § 2255 motion more than one year after his conviction became final and the claim is untimely.

Nevertheless, an otherwise untimely § 2255 claim may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred.  Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 384 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the

new evidence." <u>Rozzelle v. Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted), *cert. denied*, 133 S. Ct. 351 (2012).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a <u>severely confined</u> category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" <u>McQuiggin</u>, 569 U.S. at 395 (emphasis added).

Here, Petitioner has not shown that extraordinary circumstances prevented him from timely asserting his missing signature claim, and Petitioner has not presented any evidence, much less new evidence, to suggest he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him.  Indeed, Petitioner does not claim innocence, but instead complains the indictment was invalid because it did not contain the signature of the grand jury foreperson.  (<u>See generally</u> doc. no. 1.)  Accordingly, Petitioner's missing signature claim is not eligible for equitable tolling and should be dismissed.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 23rd day of June, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA